UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PAUL TETERS,

    Plaintiff,

v.

WASHINGTON STATE, et al.,

    Defendants.

CASE NO. 3:18-cv-05481-RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR: April 26, 2019

This 42 U.S.C. § 1983 civil rights matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §§ 636 (b)(1)(A) and (B) and Local Magistrate Judge Rules MJR 1, MJR 3, and MJR 4. Before the Court is a motion to dismiss brought by all defendants except defendant Sundstrom.[1] *See* Dkt. 21.

Plaintiff alleges that he suffers from post-traumatic stress disorder ("PTSD") with panic attacks when he is around crowds of people. He brings claims of violations of the Americans

---

[1] For ease of reference and because no substantive analysis of the claims brought against defendant Sundstrom is necessary, the undersigned will refer to movants as "defendants" throughout.

with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), the Eighth Amendment, and Washington state medical negligence law, on the basis that during his incarceration, defendants placed him in the "general population," ignoring his requests to be placed in isolation and causing him to suffer multiple panic attacks and head injuries when he lost consciousness.

Plaintiff fails to state a live claim for declaratory or injunctive relief because he no longer resides at the institution. His ADA and RA claims also do not survive the motion to dismiss because failure to adequately treat is not a cognizable claim under these acts. The majority of his § 1983 claims also fail because as a matter of law, the facts that he alleges do not rise to the level of deliberate indifference. Finally, most of his medical negligence claims succeed, with the exception that he fails to state a claim against Washington State, which is immune from his tort claim, or against certain defendants against whom he does not allege sufficient facts. Thus the undersigned recommends that defendants' motion to dismiss be granted in part and denied in part and that plaintiff be given leave to amend.

**BACKGROUND**

Plaintiff, who proceeds *in forma pauperis* and *pro se*, initiated this matter under § 1983 in June 2018. *See* Dkt. 1. In his complaint, plaintiff alleges that he suffers from severe PTSD caused by combat experience during his military service, resulting in the Department of Veterans Affairs finding that he was "100% disabled." Dkt. 9, at 5. His PTSD causes "high anxiety with panic attacks that result in a high blood pressure"; being around crowds triggers panic attacks, which culminate in plaintiff losing consciousness. Dkt. 9, at 6–7.

Plaintiff asserts that between June 17 and July 11, 2016, he was incarcerated at the Washington Corrections Center ("WCC"). Dkt. 9, at 1. He brings claims against Washington

1  State and seven individuals working with the WCC Shelton Reception Medical Providers
2  Team—Nathaniel Burt, Ph.D., and Tilahun Abraha, M.D., mental health providers; David J.
3  Kenny, M.D.; Nurses Ellen M. Sundstrom and Norisa dela Cruz; and Tiffany DeMark, M.A. and
4  J. Palmer P.A.-C., medical associates—in their individual and official capacities, for their alleged
5  actions during his incarceration. *See* Dkt. 9, at 2–5.

6  According to plaintiff, on June 17, 2016, he was transferred from Clark County Jail,
7  where he was placed in solitary confinement "for mental health reasons," to WCC, where—
8  despite his request for isolation because of his mental health condition—he was placed in the
9  general population. *See* Dkt. 9, at 8–10. Plaintiff claims that on transfer, "transport immediately
10 advised [the] Shelton Reception Medical Providers Team" about his medical condition. Dkt. 9,
11 at 9. Plaintiff also claims that at his initial screening, he informed defendant DeMark of his
12 condition and that he could not be placed in the general population. *See* Dkt. 9, at 9. He alleges
13 that as a result of being placed in the general population, he suffered a series of panic attacks that
14 caused him to pass out and to suffer head injuries. *See* Dkt. 9, at 10.

15 Specifically, plaintiff alleges that after he suffered from a panic attack on June 17, the
16 same day as his transfer into WCC. *See* Dkt. 9, at 10–11. Afterward, defendants Palmer and
17 Sundstrom determined that he should remain in the infirmary until June 21 and requested a
18 mental health assessment. *See* Dkt. 9, at 11. On June 20, defendant Burt examined plaintiff but,
19 according to plaintiff, returned him to the general population. *See* Dkts. 9, at 11; 9-2, at 13–14.

20 Plaintiff alleges that he then suffered another panic attack on June 21, causing a head
21 injury. *See* Dkt. 9, at 13. According to plaintiff, defendant Cruz believed that plaintiff had
22 deliberately injured himself and warned plaintiff of "the consequences of calling a non-
23 emergency." Dkt. 9, at 13. Defendant Abraha then conducted a psychiatric assessment of
24

REPORT AND RECOMMENDATION - 3

1  plaintiff, prescribed medications, and along with defendant Burt, returned plaintiff to the general
2  population, albeit with a limitation that he could not sleep on the upper bunk. *See* Dkt. 9, at 15.
3  Plaintiff initiated a grievance. *See* Dkt. 9, at 24.

4        Plaintiff asserts that on June 22, he suffered another panic attack, falling unconscious and
5  suffering a head injury. *See* Dkt. 9, at 17. According to plaintiff, defendants Palmer, Abraha,
6  and Sundstrom warned him that medical emergencies were for life-threatening situations only
7  and determined that plaintiff was "acting out PTSD symptoms." Dkt. 9, at 17. On June 23,
8  plaintiff initiated another grievance, to which officials responded that his complaint was a
9  classification issue, which was not grievable. *See* Dkt. 9, at 24–25.

10        On June 26, plaintiff alleges that he passed out again because of a panic attack and sent a
11  health services kite. *See* Dkt. 9, at 18. On June 28, he saw defendants Kenny and Abraha;
12  defendants Abraha and Burt filled out a transfer screening on the basis of severe PTSD and
13  needing to be housed in a supportive environment. *See* Dkt. 9, at 19. Plaintiff suffered further
14  panic attacks on June 30, July 1, July 3, and July 4. *See* Dkt. 9, at 20–22. On July 3, his panic
15  attack caused him to fall down stairs. *See* Dkt. 9, at 21. He was infracted for declaring a non-
16  emergency on July 4, although the infraction was later dismissed. *See* Dkt. 9, at 22. On July 4,
17  he was removed from the general population and placed in administrative segregation. *See* Dkt.
18  9, at 23.

19        On the basis of the failure to move him from the general population, plaintiff brings
20  claims against all defendants that his Eighth Amendment rights were violated. *See* Dkt. 9, at 26.
21  He also alleges medical negligence under Washington State law and failure to accommodate
22  under the ADA and RA. *See* Dkt. 9, at 1–5.

23        After being served with plaintiff's complaint, defendants filed the pending motion to
24

REPORT AND RECOMMENDATION - 4

dismiss. *See* Dkt. 21. Plaintiff has filed a response, and defendants have filed their reply. *See* Dkts. 32, 33.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must go beyond "labels and conclusions" and "a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555. Although "detailed factual allegations" are not necessary, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

A court must accept as true all factual allegations—but not legal conclusions—when reviewing whether a complaint survives a motion to dismiss under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Thus, when considering a motion to dismiss under Rule 12(b)(6), a court "can choose to begin by identifying pleadings that, because they are no more than [legal] conclusions, are not entitled to the assumption of truth." *Id.* Then, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

When a plaintiff is proceeding *pro se*, this Court must "'construe the pleadings liberally and . . . afford the [plaintiff] the benefit of any doubt.'" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman,* 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc)). The claims will be dismissed only where it "'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (quoting *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011)). Nevertheless, this Court will not supply essential elements of the claim that were not initially pled. *Pena v. Gardner*, 976 F.2d 469, 471–72 (9th Cir. 1992).

## MATERIALS FOR CONSIDERATION

When resolving a motion to dismiss for failure to state a claim, a district court may not consider materials outside the complaint and the pleadings. *Gumataotao v. Dir. of Dep't of Revenue & Taxation*, 236 F.3d 1077, 1083 (9th Cir. 2001). The court may, however, consider materials properly submitted as part of the complaint. *Gumataotao*, 236 F.3d at 1083.

Plaintiff attaches to his amended complaint multiple documents, including his grievances, the initial health screening at WCC, and subsequent medical records, including mental health appraisals and psychiatric assessments. Although these types of documents are not typically part of a complaint, because of the less stringent standards applied to *pro se* pleadings, and because plaintiff submitted these documents as part of the amended complaint, this Court considers these materials for purposes of making a recommendation on this motion.

**DISCUSSION**

**I. Declaratory and Injunctive Relief**

As a threshold issue, plaintiff's claims for declaratory and injunctive relief against defendants (*see* Dkt. 9, at 28) should be dismissed with leave to amend because they are moot. "'Simply stated, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Williams v. Alioto*, 549 F.2d 136, 140–41 (9th Cir. 1977) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (internal quotation omitted)); *see also Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1132 n.4 (9th Cir. 2001) (noting that a claim for declaratory relief under the ADA and RA was moot under *Williams*).

Plaintiff alleges that he has been transferred from WCC. *See* Dkt. 9. Thus ordering declaratory or injunctive relief would not afford plaintiff any relief because he no longer resides at WCC, where he alleges that defendants failed to adequately treat his condition. Unless plaintiff amends his complaint to explain why the declaratory and injunctive relief claims are not moot, he fails to state a claim. *See also* 18 U.S.C. § 3626(a)(1)(A) (limiting prospective relief in civil actions regarding prison conditions to only that necessary to correct the violation of the federal right of a particular plaintiff).

In his response to defendants' motion, plaintiff raises new allegations: that "WCC is the HUB of all inmate movement in the Washington State Prison System, any time I am to be transfer[r]ed to any other state facility, I will pass through WCC and fall with[in] the defendants['] care" and that defendant "Kenn[y] is now a primary care physician" at plaintiff's institution. *See* Dkt. 32, at 8. But this Court may not consider plaintiff's new factual allegations brought in response to a motion to dismiss. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998). The undersigned therefore recommends dismissal of plaintiff's claims for

injunctive and declaratory relief with leave to amend and addresses plaintiff's remaining claims only to the extent that he brings claims for damages.

## II.  ADA and RA Claims

The ADA, 42 U.S.C. §§ 12131–34, and the RA, 29 U.S.C. § 794, apply in the prison context. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010). To state a claim for discrimination under title II of the ADA, a plaintiff must allege that,

> (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

*O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (internal quotation omitted)). The ADA also requires a public entity to make reasonable accommodations. *See* 20 C.F.R. § 35.130(b)(7)(i).

To bring a claim under the RA, a plaintiff must show that "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Duvall*, 260 F.3d at 1135.

### *A. Threshold Issues*

At the outset, a necessary element of a claim under the RA is that the program receives federal funding. *See Duvall*, 260 F.3d at 1135. Plaintiff's complaint is devoid of any allegation to support this element. Thus, his claims against defendants under the RA should be dismissed with leave to amend.

1    Plaintiff also alleges ADA and RA claims against defendants in their individual
2 capacities. *See* Dkt. 9, at 2–5.  By statute, a Title II ADA claim must be brought against the
3 state or the state entity; claims against individuals must be brought in their official capacities
4 because no individual capacity claims exist under the statute. *See United State v. Georgia*, 546
5 U.S. 151, 159 (2006); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).  Thus, plaintiff's
6 claims against defendants in their individual capacities under the ADA and RA should be
7 dismissed with leave to amend, as well.

8    Finally, plaintiff requests compensatory, actual, and punitive damages. *See* Dkt. 9, at 28.
9 Punitive damages are not available under Title II of the ADA. *See Barnes v. Gorman*, 536 U.S.
10 181, 189 (2002).  Therefore, his claims for punitive damages should be dismissed.  The
11 remainder of the analysis in this section focuses on whether plaintiff has adequately stated a
12 claim for actual or compensatory damages under the ADA against Washington State and
13 defendants in their official capacities.

14          *B. Claims for Actual or Compensatory Damages under the ADA*

15    The Ninth Circuit has explained that the failure to place a prisoner in an institution with
16 more appropriate programs to treat his disability is, standing alone, "not actionable under the
17 ADA" because "the ADA prohibits discrimination because of disability, not inadequate
18 treatment for disability." *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1021–22 (9th Cir. 2011),
19 *overruled on other grounds by Castro v. City of L.A.*, 833 F.3d 1060 (9th Cir. 2016) (en banc);
20 *see also Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he ADA does not create a
21 remedy for medical malpractice.").  Thus, a prisoner bringing a claim of disability discrimination
22 under Title II of the ADA must distinguish between an allegation of a mere failure to
23 appropriately treat his disability—which fails to state a claim—and an allegation that he was
24

1 | effectively excluded from participation in some program, service, or activity of the public entity
2 | "because of" his disability—which may state a claim.

3 |     Plaintiff's ADA claims amount to asserting that his PTSD was not properly treated,
4 | therefore he was discriminated against under the ADA.  This is precisely the type of claim that is
5 | "not actionable under the ADA," without more.  *See Simmons*, 609 F.3d at 1022.  Plaintiff
6 | identifies no particular service, program, or activity from which he was excluded.  Rather, he
7 | argues that prison officials inappropriately placed him in the general population and that he
8 | suffered an injury as a result.  This is similar to the argument rejected in *Simmons*:  that the
9 | public entity should have done more to treat the prisoner's depression, so that plaintiffs had
10 | shown exclusion from programs and activities under the ADA.  *See* 609 F.3d at 1022.   In short,
11 | plaintiff's ADA allegations amount to no more than a claim of inadequate treatment and
12 | therefore fail as a matter of law.

13 |

14 | **III.  Section 1983 Claims**

15 |     Defendants argue that plaintiff's § 1983 claims against them should be dismissed for
16 | failure to state a claim.  *See* Dkt. 21, at 10.  Again, this Court analyzes plaintiff's claims to the
17 | extent that he brings claims for damages because, as discussed above, his declaratory and
18 | injunctive relief claims are moot.

19 |     *A.  General Principles*

20 |     The first step in a § 1983 claim "is to identify the specific constitutional right allegedly
21 | infringed."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  To state a claim for relief under 42
22 | U.S.C. § 1983, at least two elements must be met: (1) the alleged infringement must have been
23 | proximately caused by a person acting under color of state law and (2) defendants' conduct must
24 |

have deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 328 (1986). A third element of causation is implicit in the second element. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286–87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390–91 (9th Cir. 1980), *cert denied*, 449 U.S. 875 (1980). A plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

To establish an Eighth Amendment violation, a plaintiff must show that a defendant: "(1) exposed [him] to a substantial risk of serious harm; and (2) was deliberately indifferent to [his] constitutional rights." *Mendiola-Martinez v. Arpaio* 836 F.3d 1239, 1248 (9th Cir. 2016). The first prong requires a showing of a "'sufficiently serious' deprivation, such as 'incarcerat[ion] under conditions posing a substantial risk of serious harm,'" or a "'serious medical need'" and is usually a question of fact, to be decided by a jury "'if there is any room for doubt.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Lemire v. Cal. Dep't of Corr.*, 726 F.3d 1062, 1075–76 (2013)).

Under the second prong, in a suit against a prison official, a plaintiff must show deliberate indifference under "a subjective standard." *See Mendiola-Martinez*, 836 F.3d at 1248. Deliberate indifference means "'know[ing] of and disregard[ing] an excessive risk to [prisoner] health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)). "[T]he prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

1    A prisoner challenging denial of treatment or a choice between alternative courses of
2 treatment must allege that the denial or choice "was medically unacceptable under the
3 circumstances,' and made 'in conscious disregard of an excessive risk to [the prisoner's] health."
4 *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (quoting *Jackson v. McIntosh*, 90 F.3d
5 330, 332 (9th Cir. 1996)); *see Toguchi*, 391 F.3d at 1058. "[A] mere 'difference of medical
6 opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.'" *Toguchi*,
7 (quoting *Jackson*, 90 F.3d at 332). "Deliberate indifference is a high legal standard. A showing
8 of medical malpractice or negligence is insufficient[.]" *Id.* at 1060.

9    *B. Washington State*

10    At the outset, the Court notes that Washington State is immune from liability under §
11 1983 and thus, to the extent that plaintiff brings Eighth Amendment claims under § 1983 against
12 Washington, those claims should be dismissed. *See Stilwell v. City of Williams*, 831 F.3d 1234,
13 1245–46 (9th Cir. 2016).

14    *C. Individual Defendants: Deliberate Indifference*

15    Defendants argue that plaintiff has failed to sufficiently allege that each defendant was
16 deliberately indifferent to him. *See* Dkt. 21, at 12–13. This Court agrees on all claims except the
17 claim for damages under § 1983 brought against defendant DeMark.

18    To prevail on a § 1983 claim, a plaintiff must establish that a defendant did an affirmative
19 act, participated in another's affirmative act, or omitted to perform an act that he was legally
20 required to perform that caused the deprivation of which plaintiff complains. *Johnson v. Duffy*,
21 588 F.2d 740, 743 (9th Cir. 1978). This requires an individualized inquiry into causation,
22 focusing on "the duties and responsibilities of each individual defendant whose actions or
23
24

omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Regarding defendant DeMark, plaintiff sufficiently sets forth a claim for cruel and unusual punishment under these principles. Plaintiff alleges that he reported his condition to defendant DeMark during initial screening and that she was one of the health care providers who placed him in the general population. *See* Dkt. 9, at 9–10. He alleges that he said during screening that he "would not be able to cope with being placed in the general population conditions" and "requested isolation." Dkt. 9, at 9.

These facts are similar to *Akhtar v. Mesa*, where the Ninth Circuit held that allegations that a prisoner showed his medical history requiring a lower bunk in a ground-floor cell to defendants but that they ignored the medical history and that he broke his wrist as a result were sufficient to make out a claim of deliberate indifference and survive a motion to dismiss. *See* 698 F.3d 1202, 1213–14. Plaintiff has alleged that he made defendant DeMark aware of his condition and that he could not be placed with the general population and that she ignored his request, causing him to suffer panic attacks and head injuries as a result. Taken as true and interpreting plaintiff's complaint liberally, as this Court must, these factual allegations support that defendant DeMark knew of and consciously disregarded the risk to plaintiff's health that would result from being placed in general population. However, for the reasons discussed below, plaintiff fails to make out claims of deliberate indifference against the remaining defendants.

Regarding defendant Palmer, plaintiff alleges that she examined plaintiff after his June 17 panic attack, that he told her about his condition and his inability to be placed in general population, that he requested to be placed in solitary confinement, and that she and defendant

1 | Sundstrom placed plaintiff in the infirmary unit housing over the weekend until evaluation. *See*
2 | Dkt. 9, at 10–11. Later, defendant Burt—not defendant Palmer—returned plaintiff to the general
3 | population. *See* Dkt. 9, at 11. On June 22, plaintiff suffered another panic attack and fall, and
4 | defendant Palmer attended to plaintiff and warned him "that if a non-emergency were shown" he
5 | would be infracted. *See* Dkt. 9, at 17. Plaintiff alleges no particular facts to support that
6 | defendant Palmer was involved in any manner in a decision to return plaintiff to general
7 | population; therefore, his claims against defendant Palmer are insufficient. *See* Dkt. 9, at 17–18.

8 | Regarding defendant Cruz, plaintiff alleges that after he suffered a June 21 panic attack,
9 | she "didn't believe that [plaintiff] was suffering from a panic attack but deliberately injuring
10 | [himself] to create a false medical condition" and that she "warned [plaintiff] to what was and
11 | what was not a medical emergency and the consequences of calling a non-emergency." Dkt. 9,
12 | at 13. Plaintiff acknowledges that defendant Cruz believed that plaintiff was feigning his
13 | symptoms, yet argues that her "misguided" diagnosis constituted an Eighth Amendment
14 | violation. *See* Dkt. 9, at 13.

15 | The Ninth Circuit has established that as a matter of law, the difference of opinion
16 | between a prisoner and prison doctors fails to show deliberate indifference to serious medical
17 | needs. *See Jackson*, 90 F.3d at 332. Even gross negligence is insufficient. *See Wood v.*
18 | *Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Prison officials are only deliberately
19 | indifferent when they "deny, delay or intentionally interfere with medical treatment." *Id.* Under
20 | these principles, simply alleging that defendant Cruz's diagnosis of malingering was
21 | "misguided" is insufficient as a matter of law to establish deliberate indifference.

22 | Regarding defendant Kenny, the extent of plaintiff's factual allegations are that he saw
23 | defendant Kenny "in reference to a panic attack, and injuries (specifically head) as a result."
24 |

Dkt. 9, at 19. This insufficient to state a § 1983 claim against defendant Kenny because plaintiff identifies no particular facts to support that defendant Kenny caused plaintiff to remain in the general population or was deliberately indifferent in his treatment.

Regarding defendant Burt, plaintiff alleges that defendant Burt diagnosed plaintiff with PTSD, depression, and anxiety on June 20 and that plaintiff told defendant Burt that plaintiff could not reside in the general population. *See* Dkt. 9, at 11. Nevertheless, defendant Burt "determined that [plaintiff] did not appear to be in danger to self or others" and returned him to the general population. *See* Dkt. 9, at 11. Later, defendant Burt determined that plaintiff was not a danger to himself but was a threat to others and completed a screening approving plaintiff for transfer to another institution. *See* Dkt. 9, at 19.

At most, these facts show that defendant Burt improperly assessed the seriousness of plaintiff's medical condition—but this is insufficient to make out a claim of deliberate indifference. Plaintiff fails to plead facts that, even construed liberally, amount to a conscious disregard of an excessive risk to his safety. Rather, he alleges that defendant Burt examined and diagnosed plaintiff, yet incorrectly determined that plaintiff's condition was insufficiently serious to warrant taking him out of the general population at that time. *See* Dkt. 9, at 11, 19. Plaintiff acknowledges that his medical providers believed that he was feigning his condition (*see* Dkt. 9, at 17), such that his factual allegations fail to amount to a showing that his medical providers simply ignored his condition.

Regarding defendant Abraha, plaintiff alleges that during an encounter on June 21, after a panic attack and head injury, plaintiff informed defendant Abraha that plaintiff could not stay in the general population. *See* Dkt. 9, at 14. Defendant Abraha diagnosed PTSD and depression and prescribed medications but returned plaintiff to the general population, with a note that he

1 could not sleep in the upper bunk. *See* Dkt. 9, at 15.  On June 22, plaintiff saw defendant Abraha

2 again, who warned plaintiff that "a medical emergency is for life threatening situations only."

3 Dkt. 9, at 17.  Plaintiff alleges that "[i]t was evident that the Health Care Providers determined

4 that [he] was acting out PTSD symptoms." *See* Dkt. 9, at 17.  On June 28, plaintiff saw

5 defendant Abraha again—this time, defendant Abraha screened plaintiff for a transfer on the

6 basis that he "needed [a] supportive environment" for his severe PTSD and was "a danger to

7 [himself] and others." Dkt. 9, at 19.  For the same reasons that plaintiff fails to state a claim of

8 deliberate indifference against defendant Burt, his claim against defendant Abraha is inadequate

9 as a matter of law.

10 *D. Qualified Immunity*

11 Because plaintiff sufficiently states an Eighth Amendment claim against defendant

12 DeMark, the Court next addresses defendants' qualified immunity argument.  *See* Dkt. 21, at 15.

13 The right "to have prison officials not be 'deliberately indifferent to serious medical needs'" is a

14 sufficiently particularized right for the purposes of the qualified immunity analysis.  *Kelley v.*

15 *Borg*, 60 F.3d 664, 666–67 (9th Cir. 1995).

16 At this early stage, the Court notes that a qualified immunity defense is best left for

17 summary judgment.  *See Wong v. United States*, 373 F.3d 952, 956–57 (9th Cir. 2004).  Thus, if

18 the court determines that dismissal is not appropriate, the court may deny a qualified immunity

19 defense without prejudice and allow a defendant to re-raise the defense after further factual

20 development.  *See Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999).

21 Defendants generally assert that the law is clearly established that prison officials have a

22 great deal of latitude with respect to treatment options and that it was reasonable for defendants

23 to believe that their conduct was lawful.  *See* Dkt. 21, at 16.  However, it is also clearly

24

1  established that a prison official who knows of and disregards an excessive risk to a prisoner's
2  health and safety violates the Eighth Amendment.  *See Toguchi*, 391 F.3d at 1057.   Regarding
3  defendant DeFord—the only defendant against whom plaintiff has asserted § 1983 claims that
4  should survive defendants' Rule 12(b)(6) motion—the facts viewed in the light most favorable to
5  plaintiff are that he told DeFord he could not be housed with the general population because of
6  his condition, yet that DeFord ignored plaintiff's warning and placed him there anyway, causing
7  him to suffer a series of panic attacks.
8        Thus, at this early stage, plaintiff has made sufficient allegations that would preclude
9  defendant DeMark from prevailing on a qualified immunity defense.  Therefore, the Court
10 recommends that defendants' motion as to qualified immunity for defendant DeMark be denied
11 without prejudice.
12
13       **IV.  Medical Malpractice**
14       Plaintiff appears to bring an action for damages under ch. 7.70 RCW, regarding medical
15 malpractice.  *See* Dkt. 9, at 26; *see also Miller v. Jacoby*, 145 Wn.2d 65, 72 (2001) (holding that
16 claims of injury from health care must be brought under ch. 7.70 RCW).  Defendants vaguely
17 argue that the facts set forth by plaintiff are "deficient."  Dkt. 21, at 15.
18       Plaintiff must establish one of the conditions set forth in RCW 7.70.030, including, as
19 applicable here, "[t]hat injury resulted from the failure of a health care provider to follow the
20 accepted standard of care[.]"  *See* RCW 7.70.030(1).  Further, RCW 7.70.040 requires a plaintiff
21 alleging failure to follow the accepted standard of care to show that (1) "[t]he health care
22 provider failed to exercise that degree of care, skill, and learning expected of a reasonably
23 prudent health care provider at that time in the profession or class to which he or she belongs, in
24

the state of Washington, acting in the same or similar circumstances" and (2) that "[s]uch failure was a proximate cause of the injury complained of." The former question generally requires expert testimony (*see Harris v. Groth*, 99 Wn.2d 438, 449 (1983)); the latter generally is a jury question. *See Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 935 (1982).

Here, construing plaintiff's complaint liberally, plaintiff alleges the following facts regarding failure to exercise the requisite degree of care by individual defendants, all of whom he claims were members of the Medical Providers Team. *See* Dkt. 9, at 2–5. He alleges that defendant DeMark conducted his intake screening and that he told her that he could not be housed in the general population because of his condition. *See* Dkt. 9, at 9–10. Nevertheless, she placed him in the general population. *See* Dkt. 9, at 10. He alleges that he suffered a panic attack that same day. *See* Dkt. 9, at 10.

Plaintiff alleges that he was seen by defendant Burt, a doctor, that he informed defendant Burt of his condition and explained that he could not reside in the general population, and yet that defendant Burt returned him to the general population, where he suffered a panic attack the next day. *See* Dkt. 9, at 10–13.

Regarding defendant Cruz, a nurse, plaintiff alleges that she misdiagnosed his symptoms as being a result of "deliberate[] injur[y]," rather than a panic attack. *See* Dkt. 9, at 13. According to plaintiff, defendant Cruz's misdiagnosis "influenced" later medical providers to believe that plaintiff was feigning his symptoms. *See* Dkt. 9, at 13.

Regarding defendant Abraha, plaintiff contends that he told defendant Abraha of his medical history, fear for his own safety, and inability to be housed in the general population. *See* Dkt. 9, at 15. Nevertheless, defendant Abraha merely prescribed medication and imposed a special watch alert for suicidal intention or plan and returned plaintiff to the general population.

1 *See* Dkt. 9, at 15.  Defendant Abraha also saw plaintiff again after a panic attack caused him to lose consciousness, but, plaintiff alleges, Abraha merely warned plaintiff against "acting out PTSD symptoms."  Dkt. 9, at 17.

At least against defendants Abraha, Cruz, Burt, and DeMark, at this early stage, the Court finds that the facts alleged are sufficient to state a claim of medical malpractice because plaintiff has alleged facts to support that these defendants breached the applicable standard of care and that such proximately caused him harm.

However, the Court finds that the conclusory allegations against defendants Kenny and Palmer—which set forth only that these defendants attended to plaintiff in some capacity and not that they proximately caused any harm to plaintiff—are insufficient.  *See* Dkt. 9, at 17, 19.  As such, these claims should be dismissed.  Further, plaintiff may not bring tort claims under Washington State law in federal court against Washington State or against defendants in their official capacities.  *See Pennhurst v. State Sch. & Hospital v. Halderman*, 465 U.S. 89, 117, *quoted in Ashker v. Cal. Dep't of Corr.*, 112 F.3d 392, 394 (9th Cir. 1997).  His claims against the state and against defendants in their official capacities should therefore be dismissed, as well.

## CONCLUSION

For the reasons set forth above, the Court recommend that defendants' motion to dismiss (Dkt. 21) be **GRANTED IN PART AND DENIED IN PART**.  Specifically, the following claims should be dismissed with leave to amend:  (1) all claims for declaratory and injunctive relief against defendants Washington State, Abraha, Burt, Cruz, DeMark, Kenny, and Palmer; (2) all claims against defendants Washington State, Abraha, Burt, Cruz, DeMark, Kenny, and

Palmer brought under the ADA and RA; (3) all claims against defendants Washington State, Abraha, Burt, Cruz, Kenny, and Palmer under § 1983 for Eighth Amendment violations; (4) all claims against defendants Washington State, Kenny, and Palmer under state law for medical malpractice; and (5) claims against defendants Abraha, Burt, Cruz, DeMark, Kenny, and Palmer in their official capacities for medical malpractice.  The following claims should survive: (1) a § 1983 claim for damages brought against defendant DeMark in her individual capacity; (2) medical malpractice claims for damages under state law against defendants Abraha, Burt, Cruz, and DeMark in their individual capacities; and (3) claims against defendant Sundstrom, which are not addressed in this order.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **April 26, 2019** as noted in the caption.

Dated this 10th day of April, 2019.

J. Richard Creatura
United States Magistrate Judge