1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PAUL TETERS,

Plaintiff,

v.

STATE OF WASHINGTON, *et al.*,

Defendants.

CASE NO. 3:18-CV-05481-RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR: **June 28, 2019**.

The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR1, MJR3 and MJR4.  This matter is before the Court on defendant Ellen M. Sundstrom's motion for summary judgment.  *See* Dkt. 34.

Plaintiff brings claims of medical malpractice, violation of Title II of the Americans with Disabilities Act (the "ADA") and the Rehabilitation Act (the "RA"), and cruel and unusual punishment against the State of Washington and medical personnel at the Washington Corrections Center, including defendant Sundstrom, who was a treating nurse practitioner. Defendant Sundstrom seeks summary judgment of plaintiff's claims against her.

Because plaintiff asserts inadequate treatment rather than denial of access, his ADA and RA claims are not cognizable. Because plaintiff's claims amount to essentially, an assertion of misdiagnosis and medical negligence rather than conscious disregard of his serious medical needs, his Eighth Amendment claim fails as a matter of law. And because plaintiff fails to come forward with medical expert evidence to support essential elements of his medical malpractice claim, summary judgment of this claim is appropriate. Thus, the undersigned recommends that defendant Sundstrom's motion for summary judgment be granted and that plaintiff's claims against defendant Sundstrom be dismissed with prejudice.

## BACKGROUND

Plaintiff, who proceeds *pro se* and *in forma pauperis* (Dkt. 8), initiated this matter under § 1983 in June 2018. *See* Dkt. 1. Plaintiff alleges that he suffers from severe PTSD caused by combat experience, resulting in the Department of Veterans Affairs finding that he was "100% disabled[.]" Dkt. 9, at 5. He alleges that his PTSD causes "high anxiety with panic attacks that result in a high blood pressure" and that being around crowds triggers his panic attacks, which culminate in plaintiff losing consciousness. Dkt. 9, at 6–7.

Plaintiff brings claims against Washington State and seven individuals working with the Washington Corrections Center Shelton Reception Medical Providers team, including defendant Sundstrom. *See* Dkt. 9, at 2–5. He alleges that on June 17, 2016, he was transferred to WCC where—despite his request for isolation because of his mental health condition—he was placed in the general population and that this resulted in him suffering a series of panic attacks and resulting head injuries. *See* Dkt. 9, at 8–10.

Regarding defendant Sundstrom's actions, plaintiff alleges that after he suffered a panic attack when he was placed in general population on June 17, defendant Sundstrom and defendant

1   J. Palmer P.A.-C, a medical associate, determined that plaintiff should remain in the infirmary

2   until June 21 and requested a mental health assessment.  *See* Dkt. 9, at 11.  Plaintiff was then

3   returned to the general population.  *See* Dkts. 9, at 11; 9-2, at 13–14.

4          Plaintiff alleges that he then suffered panic attacks on June 21 and 22.  *See* Dkt. 9, at 13,

5   17.  He asserts that he fell unconscious on June 22 and suffered a head injury, but that defendants

6   Palmer, Sundstrom, and Tilahun Abraha, a doctor, warned him that medical emergencies were

7   for life-threatening situations only and determined that plaintiff was "acting out PTSD

8   symptoms."  Dkt. 9, at 17.  Plaintiff alleges that he suffered subsequent panic attacks on several

9   occasions before being removed from the general population but does not allege any other

10  particular facts regarding defendant Sundstrom's involvement.  *See* Dkt. 9, at 18–23.

11         On the basis of these facts, plaintiff brings claims against defendant Sundstrom in her

12  official and individual capacities for medical malpractice, violation of the Americans with

13  Disabilities Act and Rehabilitation Act, and cruel and unusual punishment.  *See* Dkt. 9, at 3.

14         Upon the motion of the defendants other than defendant Sundstrom, the District Court

15  dismissed the claims brought against the other defendants for declaratory or injunctive relief and

16  under the ADA and RA.  *See* Dkts. 37, at 19; 40.  The District Court also dismissed all claims

17  against defendant Washington State and most of the claims for Eighth Amendment violations

18  and medical malpractice.  *See* Dkts. 37, at 20; 40.

19         Defendant Sundstrom has now moved for summary judgment on all the claims brought

20  against her and provided notice to plaintiff of her dispositive motion pursuant to *Rand v.*

21  *Rowland*, 154 F.3d 952 (9th Cir. 1998).  *See* Dkts. 34, 36.  Defendant Sundstrom does not

22  dispute that she evaluated plaintiff on June 17 and 22, 2016.  *See* Dkt. 34, at 3.  However, she

23  asserts that there is no genuine issue of material fact that her actions on these occasions failed to

24

1    amount to cruel and unusual punishment, violations of the ADA and RA, or medical malpractice.

2    *See* Dkt. 34.  This Court agrees.

3    **STANDARD OF REVIEW**

4      Summary judgment is appropriate "if the movant shows that there is no genuine dispute

5    as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

6    56(a).  "In ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be

7    believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor.'"  *Moldex-*

8    *Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018) (quoting *Anderson v.*

9    *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Further, "'courts should construe liberally

10   motion papers and pleadings filed by *pro se* inmates and should avoid applying summary

11   judgment rules strictly.'"  *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas*

12   *v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010); *see also Blaisdell v. Frappiea*, 729 F.3d 1237,

13   1241 (9th Cir. 2013) (a court must not hold "missing or inaccurate legal terminology or muddled

14   draftsmanship against" a *pro se* inmate).  "This rule exempts *pro se* inmates from *strict*

15   compliance with the summary judgment rules, but it does not exempt them from *all* compliance."

16   *Soto*, 882 F.2d at 872.

17     The moving party is entitled to summary judgment if the evidence produced by the

18   parties permits only one conclusion.  *Anderson*, 477 U.S. at 251.  Where there is a complete

19   failure of proof concerning an essential element of the nonmoving party's case on which the

20   nonmoving party has the burden of proof, all other facts are rendered immaterial, and the moving

21   party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

22   (1986).

23

24

1    "To defeat summary judgment, the nonmoving party must produce evidence of a genuine

2    dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N.A., Inc.*, 911

3    F.3d 989, 992 (9th Cir. 2018) (citing *Anderson*, 477 U.S. at 255).   "Credibility determinations,

4    the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

5    functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255.  Nonetheless, the party opposing

6    the motion must do more than simply show that there is some metaphysical doubt as to the

7    material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  And

8    regarding materiality, a fact is only material if it "might affect the outcome of the suit under the

9    governing [substantive] law[.]" *Anderson*, 477 U.S. at 248.

10    "A party asserting that a fact cannot be or is genuinely disputed must support the

11    assertion by" either "citing to particular parts of materials in the record" or "showing that the

12    materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

13    party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

14    This Court—

15    must consider as evidence in his opposition to summary judgment all of [plaintiff's]
      contentions offered in motions and pleadings, where such contentions are based on
16    personal knowledge and set forth facts that would be admissible in evidence, and
      where [plaintiff] attested under penalty of perjury that the contents of the motions
17    or pleadings are true and correct.

18    *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).  Nevertheless, to the extent that plaintiff

19    relies on conclusory statements, unsupported conjecture, and allegations based merely on belief,

20    such are insufficient to create a genuine, material issue of fact.  *See Hernandez v. Spacelabs*

21    *Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *McElyea v. Babbitt*, 833 F.3d 196, 197–98 &

22    n.1. (9th Cir. 1987) (per curiam).  A defendant who seeks summary judgment must provide a pro

23    se prisoner plaintiff with concurrent notice of the requirements to defeat a summary judgment

24

motion under Rule 56. *See Woods v. Carey*, 684 F.3d 934, 938 (9th Cir. 2012) (citing *Rand*, 154 F.3d at 960–61).

### DISCUSSION

### I.  ADA and RA Claims

Plaintiff brings claims against defendant Sundstrom under § 1983 for violating his rights under the ADA and RA. *See* Dkt. 9, at 2, 26.

To state a claim for discrimination under title II of the ADA, a plaintiff must allege that,

> (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

*O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (internal quotation omitted)).

It is well-settled that an allegation that a condition was not properly treated, standing alone, is insufficient to make out a claim under the ADA. *See Simmons v. Navajo Cty.*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."), *overruled on other grounds by Castro v. City of L.A.*, 833 F.3d 1060 (9th Cir. 2016) (en banc).  Plaintiff's claim is precisely the type of claim that *Simmons* holds is inadequate under the ADA:  plaintiff claims that defendant Sundstrom failed to prevent plaintiff from being housed in general population, which caused his panic attacks and injuries.

Although defendant Sundstrom argues that plaintiff has failed to make out more than a claim of inadequate medical care, which is not a viable claim under the ADA, plaintiff fails to address this issue or to raise any genuine issue of material fact on this point in his response. *See* Dkts. 34, at 10; 39.  As such, summary judgment of his claim that defendant Sundstrom violated

the ADA should be granted, and his claim should be dismissed with prejudice. Because "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act," summary judgment dismissal of his claim under the RA should be granted for the same reason. *See Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

**II.  Eighth Amendment**

Plaintiff alleges that defendant Sundstrom's actions on the two occasions that she treated him constituted cruel and unusual punishment in violation of the Eighth Amendment. *See* Dkt. 9, at 26.

The Eighth Amendment bars government officials from acting with deliberate indifference to a prisoner's health and safety or serious medical needs. *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016). "To prove a violation of the Eighth Amendment, a plaintiff must show that the defendant: (1) exposed [him] to a substantial risk of serious harm; and (2) was deliberately indifferent to [his] constitutional rights." *Id.*

A claim of deliberate indifference against a prison official employs a subjective standard. *See Farmer v. Brennan*, 511 U.S. 825, 838 (1994). Plaintiff must show that defendant Sundstrom "'consciously disregar[ded]' a substantial risk of serious harm." *Id.* at 839 (internal citation omitted). She must have known that the inference could be drawn that a substantial risk of serious harm existed and also have drawn the inference. *See id.* at 837. And she must have disregarded that risk "by failing to take reasonable measures to abate it." *Id.* at 847.

*A.  June 17*

On June 17—the first of the two occasions that defendant Sundstrom treated plaintiff—he alleges that she examined him and decided that he should be placed in the infirmary unit housing

REPORT AND RECOMMENDATION - 7

1    until evaluated, including submitting a request for mental health assessment.  *See* Dkt. 9, at 11.

2    According to plaintiff, it was another defendant who returned plaintiff to the general population,

3    on June 20.  *See* Dkts. 9, at 11; 9-2, at 13–14.  Similarly, in her declaration in support of

4    summary judgment, defendant Sundstrom asserts that she "made the decision to house [plaintiff]

5    in the inpatient unit . . . until he could be evaluated by psychiatry" and that she "did not see

6    [plaintiff] again until June 22[.]"  Dkt. 35, at 2.

7         Plaintiff does not specifically address the June 17 encounter in his summary judgment

8    response, instead repeating his arguments that defendant Sundstrom's conduct violated his rights,

9    without specifying further, or otherwise contradicting, defendant Sundstrom's assertions.  *See*

10    Dkt. 39.  Thus, there is no genuine issue of material fact that on June 17, defendant Sundstrom

11    recommended that plaintiff remain in the infirmary until psychiatric assessment and that she was

12    not involved in the decision to return plaintiff to the general population.  These undisputed facts

13    fail to amount to a conscious disregard of a substantial risk of harm to plaintiff, and thus as a

14    matter of law, defendant Sundstrom's actions on June 17 do not amount to a violation of the

15    Eighth Amendment.

16         *B.  June 22*

17         In support of summary judgment, defendant Sundstrom asserts that on June 22, she "had

18    no ability to override" the psychologist's and psychiatrist's earlier determination that plaintiff

19    could be housed in the general population.  *See* Dkt. 35, at 3.  In response, plaintiff points to

20    evidence that on July 4, another nurse removed plaintiff from the general population—evidence

21    that, viewed in the light most favorable to plaintiff, creates a factual dispute regarding whether

22    defendant Sundstrom could, in fact, have ordered plaintiff removed from the general population,

23

24

1   even after the doctors had decided that plaintiff should remain in the general population. *See*

2   Dkt. 9-4, at 20.

3       But regardless of whether defendant Sundstrom could have removed plaintiff from the

4   general population on June 22, plaintiff's allegations are essentially an assertion that defendant

5   Sundstrom misdiagnosed him on the basis that she believed he was acting out his symptoms after

6   she examined him. *See* Dkt. 9, at 17. And it is well-settled that "a mere 'difference of medical

7   opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.'" *Toguchi v.*

8   *Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th

9   Cir. 1996)).

10      In her summary judgment motion, defendant Sundstrom argues that she did not

11  consciously disregard an excessive risk of harm (Dkt. 34, at 13), and she provides evidence that

12  she observed minimal injuries and diagnosed no more than a superficial hematoma on June 22,

13  on the basis that plaintiff otherwise appeared normal on examination. *See* Dkt. 35, at 2. She was

14  also aware that plaintiff had previously been evaluated by doctors who had determined that

15  plaintiff should be released back into the general population. *See* Dkt. 35, at 8. Thus defendant

16  Sundstrom has provided evidence that she made a medical judgment that plaintiff's condition

17  was not as serious as he claimed during the encounter and that he was acting out his symptoms.

18      In response to this evidence, plaintiff re-asserts that he informed defendant Sundstrom on

19  June 22 that he could not be housed in the general population. *See* Dkt. 39, at 2. He

20  acknowledges that defendant Sundstrom was aware of plaintiff's allegations about his condition,

21  but he claims that she "ignored" him. *See* Dkt. 39, at 3. Essentially, he challenges her

22  assessment that he was acting out his symptoms and that his condition was not so serious as he

23  alleged and argues that this constituted deliberate indifference.

24

1    Plaintiff must "show that the course of treatment the doctors chose was medically

2    unacceptable under the circumstances . . . and . . . that they chose this course in conscious

3    disregard of an excessive risk to plaintiff's health." *Jackson*, 90 F.3d at 332.  Plaintiff's

4    summary judgment opposition makes no argument and sets forth no facts to support that personal

5    animosity motivated defendant Sundstrom.  *See id.* (allegation that doctors denied a kidney

6    transplant on the basis of personal animosity, not honest medical judgment, created genuine issue

7    of material fact).  He premises his deliberate indifference claim on a "misdiagnos[is]"—but, on

8    summary judgment, a claim of deliberate indifference regarding medical treatment requires a

9    showing of more than gross negligence (*see Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir.

10   1990))—there must be a "genuine issue of fact . . . raised regarding [defendant Sundstrom's]

11   subjective knowledge and conscious disregard of a substantial risk of serious injury to" plaintiff.

12   *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).  Plaintiff fails to raise such an issue

13   here.

14   Even viewed in the light most favorable to plaintiff, these facts do not amount to a

15   situation such as in *Colwell v. Bannister*, where the Ninth Circuit observed that a denial of

16   treatment based on DOC policy—in contrast to a denial based on medical indication,

17   misdiagnosis, ordinary medical mistake, or negligence—was "the very definition of deliberate

18   indifference."  763 F.3d 1060, 1068 (9th Cir. 2014).  The Court notes that even where a provider

19   was informed of the alleged serious medical need, district courts have not found that this

20   amounts to deliberate indifference where the provider's observations or other information

21   supported her decision.  *See, e.g.*, *Acasio v. San Mateo Cty.*, 14-cv-04689-JSC, 2015 WL

22   8752982, at *3 (N.D. Cal. Dec. 15, 2015) (no deliberate indifference where nurse checked vital

23   signs and was told that plaintiff had panic attacks but did not provide medication); *Armstrong v.*

24

1  *Friederichs*, C-07-00680-JF(PR), 2010 WL 2179787, at *8 (N.D. Cal. May 26, 2010) (no

2  conscious disregard where plaintiff told doctor about "shock" feelings but doctor refused to order

3  an MRI based upon the doctor's subjective and objective observations). Nor does the allegation

4  that plaintiff was later moved from general population suggest that defendant Sundstrom

5  subjectively drew any inference that plaintiff was subject to a substantial risk of serious harm.

6  Therefore, summary judgment should be granted in defendant Sundstrom's favor on

7  plaintiff's Eighth Amendment claims against her.

8  **III.  Medical Malpractice**

9  Defendant Sundstrom argues that the Court should either grant summary judgment of the

10 medical malpractice claim against her because plaintiff has failed to produce the testimony of a

11 qualified medical expert to support his claims or dismiss this claim without prejudice because the

12 Court lacks jurisdiction over the claim if it grants summary judgment dismissal of the remaining

13 claims. *See* Dkt. 34, at 16–17.

14 Washington State law requires a party seeking recovery for medical malpractice to

15 establish the elements of the accepted standard of care and of causation using expert testimony.

16 *See Young v. Key Pharmaceuticals, Inc.*, 770 P.2d 182, 188 (Wash. 1989). In some cases, where

17 these matters are within the expertise of a layperson, courts have dispensed with the requirement

18 of expert testimony. *See id.* at 189. But this exception is confined to rare instances where the

19 facts are observable by a layperson's senses and describable without medical training. *See id.*

20 (discussing cases involving amputation of the wrong limb or poking a patient's eye with a

21 needle).

22 Here defendant Sundstrom argues that plaintiff has failed to come forward with medical

23 expert testimony that she breached the standard of care on either occasion that she treated

24

plaintiff.  *See* Dkt. 34, at 16.  Plaintiff neither points to expert evidence nor addresses this issue. *See* Dkt. 39.  This failure of proof regarding an essential element of plaintiff's case merits granting summary judgment in defendant Sundstrom's favor.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *accord Thompson v. Frank Luna*, 441 Fed. Appx. 528, 529 (9th Cir. 2011) (affirming summary judgment in a prisoner's 1983 alleging deliberate indifference and medical malpractice because the prisoner failed to provide expert medical testimony regarding the standard of care and causation); *Reynolds v. Washington Department of Corrections*, No. 16-35776, 724 Fed. Appx. 604 (9th Cir. May 29, 2018) (same).

## CONCLUSION

The undersigned recommends that defendant Sundstrom's summary judgment motion (Dkt. 34) be **GRANTED** and that plaintiff's claims against defendant Sundstrom be **DISMISSED WITH PREJUDICE.**

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge (*see* 28 U.S.C. § 636(b)(1)(C)) and can result in a result in a waiver of those objections for purposes of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **June 28, 2019**, as noted in the caption.

Dated this 10th day of June, 2019.

J. Richard Creatura
United States Magistrate Judge