UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PAUL TETERS,

    Plaintiff,

 v.

STATE OF WASHINGTON, *et al.*,

    Defendants.

CASE NO. 3:18-cv-05481 RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR: December 13, 2019

  The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and local Magistrate Judge Rules MJR1, MJR3, and MJR4.

  Plaintiff, who is incarcerated, brings claims regarding his transfer from county jail into Department of Corrections' custody at the Washington Corrections Center ("WCC"). He alleges that because of his post-traumatic stress disorder ("PTSD"), he could not be housed with the general population at WCC. He claims that defendants, who are prison medical providers, were deliberately indifferent to him and committed medical malpractice when they failed to place him

REPORT AND RECOMMENDATION - 1

outside the general population because placement in the general population causing plaintiff to suffer panic attacks and injuries. Defendants now move for summary judgment dismissal of plaintiff's remaining claims.

Because the undisputed facts establish that even if defendant Tiffany DeMark,[1] who conducted plaintiff's intake screening, had taken action by referring plaintiff for immediate medical follow-up, plaintiff would have remained in the general population, his remaining deliberate indifference claim should be dismissed with prejudice. Because plaintiff has come forward with no expert testimony regarding his medical malpractice claims and because this is not a rare situation where medical expert testimony is unnecessary, his medical malpractice claims against various WCC medical staff—defendants Tilahun Abraha, M.D.; Nathaniel Burt, Ph.D.; Norise Dela Cruz, R.N.; and DeMark—should be dismissed with prejudice.

## BACKGROUND

**I. Procedural Background**

Plaintiff, who proceeds *in forma pauperis* and *pro se* (Dkt. 8), initiated this matter in June 2018. *See* Dkt. 1. Plaintiff, who alleges that he suffers from severe PTSD, brought claims for medical malpractice and cruel and unusual punishment and claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") against the State of Washington and seven WCC medical providers for events that allegedly occurred during his confinement at WCC in 2016. *See* Dkt. 9, at 3–6.

---

[1] Defendant DeMark is named in plaintiff's complaint as "TD Mark." However, the undersigned refers to defendant DeMark by the name she gives in her declaration. Dkt. 53, at 5.

1    The Court ultimately dismissed with prejudice claims against one defendant, Ellen

2 Sundstrom. *See* Dkt. 51. And the Court dismissed without prejudice plaintiff's claims against

3 the remaining defendants for declaratory and injunctive relief and under the ADA and RA. *See*

4 Dkt. 40, at 2. The Court also dismissed without prejudice some of the Eighth Amendment and

5 medical malpractice claims. *See* Dkt. 40, at 2. The remaining claims are a § 1983 claim for

6 damages for violation of the Eighth Amendment against defendant DeMark in her individual

7 capacity and medical malpractice claims for damages against defendants Abraha, Burt, Cruz, and

8 DeMark in their individual capacities. *See* Dkt. 37, at 20.

9    **II. Relevant Allegations**

10    Plaintiff's claims against defendants Abraha, Burt, Cruz, and DeMark rely on the

11 following allegations. Plaintiff suffers from PTSD, including symptoms of high anxiety and

12 panic attacks, and avoids being around crowds because being around crowds triggers panic

13 attacks that cause him to lose consciousness. *See* Dkt. 9, at 6–7. In county jail, based on his

14 condition, plaintiff was kept in solitary confinement. *See* Dkt. 9, at 8. He was transferred to

15 WCC in June 2016. *See* Dkt. 9, at 9.

16    Defendants Abraha, Burt, Cruz, and DeMark are on the WCC Shelton reception medical

17 providers team. *See* Dkt. 9, at 2–4. Upon his arrival at WCC, plaintiff alleges that transport staff

18 advised the medical providers team about his medical condition. *See* Dkt. 9, at 9. Moreover,

19 plaintiff immediately reported his "100% disability" during screening and explained that he

20 could not be placed in general population, requesting isolation. *See* Dkt. 9, at 9. However,

21 plaintiff asserts, defendant DeMark and other health care providers "ignored[] and

22 misdiagnosed" his condition and the risk to his safety by placing him in the general population.

23 *See* Dkt. 9, at 10.

24

1          According to plaintiff, he suffered a panic attack on June 17, 2016, was brought to
2  treatment, and reiterated to health care providers that he could not cope with being placed in the
3  general population. *See* Dkt. 9, at 10–11. Two providers placed plaintiff in infirmary unit
4  housing over the weekend, until a mental health assessment was performed. Dkt. 9, at 11.
5          On June 20, defendant Burt performed the mental health assessment and diagnosed
6  plaintiff with PTSD, major depressive disorder, and unspecified anxiety disorder. *See* Dkt. 9, at
7  11. However—and despite plaintiff repeating that he could not reside in the general
8  population—defendant Burt returned plaintiff to the general population. Dkt. 9, at 11.
9          On June 21, plaintiff suffered a panic attack that caused a head injury. Dkt. 9, at 13.
10 Staff called a medical emergency and took plaintiff to the infirmary. Dkt. 9, at 13. There,
11 defendant Cruz believed that plaintiff had deliberately injured himself to create a false medical
12 condition and warned plaintiff against calling a false medical emergency. Dkt. 9, at 13.
13 Defendant Abraha then prescribed medication for plaintiff and returned plaintiff to the general
14 population with a health status report that he could not sleep on the upper bunk. *See* Dkt. 9, at
15 15.
16         On June 22 and 26, plaintiff again fell unconscious because of panic attacks. *See* Dkt. 9,
17 at 17. On June 26, staff, including defendant Abraha, warned plaintiff against calling non-
18 emergencies. *See* Dkt. 9, at 17. On June 28, defendant Abraha recommended that plaintiff be
19 transferred to a Veterans Unit at another prison. *See* Dkt. 9, at 19. Plaintiff attaches defendant
20 Abraha's mental health transfer screening to the complaint; in the screening, defendant Abraha
21 states that the basis for the transfer is that plaintiff became aggressive during treatment and was a
22 danger to himself and others. *See* Dkt. 9-3, at 20.
23
24

1    On June 30, July 1, July 3, and July 4, plaintiff again fell unconscious and struck his
2 head. *See* Dkt. 9, at 20–22. Following the July 4 incident, medical staff infracted plaintiff for
3 declaring false emergencies—an infraction that was later dismissed. *See* Dkt. 9, at 22. Plaintiff
4 placed in administrative segregation that day. *See* Dkt. 9, at 23.

5    **III. Summary Judgment Motion**

6    The remaining defendants have moved for summary judgment dismissal of plaintiff's
7 claims. *See* Dkt. 52. Defendants served plaintiff with a notice of summary judgment motion as
8 required by *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). *See* Dkt. 59.

9    Plaintiff has not filed a response, and the matter is ripe for decision. *See* Dkt. 52.
10 Plaintiff's complaint was signed under penalty of perjury and is being considered as evidence.
11 Dkt. 9, at 29. Because plaintiff is *pro se*, the Court "must consider as evidence in his opposition
12 to summary judgment all of [plaintiff's] contentions offered in motions and pleadings, where
13 such contentions are based on personal knowledge and set forth facts that would be admissible in
14 evidence, and where [plaintiff] attested under penalty of perjury that the contents of the motions
15 or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

16    **DISCUSSION**

17    Defendants request summary judgment dismissal of plaintiff's claims that defendant
18 DeMark was deliberately indifferent to plaintiff's medical needs and that defendants Abraha,
19 Burt, Cruz, and DeMark committed medical malpractice. *See* Dkt. 52. The undersigned
20 recommends that these claims be dismissed with prejudice for the reasons discussed below.

21    **I. Summary Judgment Legal Principles**

22    Summary judgment is appropriate if a moving party shows that "there is no genuine
23 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

24

1  R. Civ. P. 56(a). The materiality of a given fact is determined by the required elements of the
2  substantive law under which the claims are brought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
3  242, 248 (1986). Factual disputes that do not affect the outcome of the suit under the governing
4  law will not be considered. *Id.*

5  Where there is a complete failure of proof concerning an essential element of the non-
6  moving party's case on which the nonmoving party has the burden of proof, all other facts are
7  rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*
8  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the
9  evidence presented through the prism of the substantive evidentiary burden"). However, when
10 presented with a motion for summary judgment, the court shall review the pleadings and
11 evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation
12 omitted), and "a pro se complaint will be liberally construed. . . ." *Pena v. Gardner,* 976 F.2d
13 469, 471 (9th Cir. 1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation
14 omitted).

15 Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing
16 the motion must do more than simply show that there is some metaphysical doubt as to the
17 material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The
18 opposing party cannot rest solely on his pleadings but must produce significant, probative
19 evidence in the form of affidavits, and/or admissible discovery material that would allow a
20 reasonable jury to find in his favor. *Id.* at n.11; *Anderson*, 477 U.S. at 249–50. However,
21 weighing of evidence and drawing legitimate inferences from facts are jury functions, and not
22 the function of the court. *See United Steel Workers of Am. v. Phelps Dodge Corps.*, 865 F.2d
23 1539, 1542 (9th Cir. 1989). And if the moving party has not met its burden on summary
24

judgment, the Court will not grant the motion—even if there is no opposition to the motion. *See Henry v. Gill Inds.*, 983 F.2d 943 950 (9th Cir. 1993) ("Summary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues.").

**II. Eighth Amendment**

Regarding defendant DeMark, plaintiff alleges that she violated the Eighth Amendment because although he warned defendant DeMark at his initial screening that he could not be placed in the general population because of his mental conditions and requested to be placed in isolation, she ignored his request and placed him in the general population, anyway. *See* Dkt. 9, at 10.

**A. Legal Principles**

In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that (l) the conduct complained of was committed by a person acting under color of state law and (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Moreover, a plaintiff must show that defendant's conduct was both the "cause-in-fact" and "proximate cause" of plaintiff's injury. *See Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Deliberate indifference has subjective and objective components: a plaintiff must show that an official knew of and disregarded an excessive risk to prisoner health or safety. "[T]he official

must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Where, as here, a claim is for failure to provide adequate treatment, a plaintiff must establish that he suffered from "a sufficiently serious medical need" by showing that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 (9th Cir. 2019). In this context, to show deliberate indifference, plaintiff must show "that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* at 786. Part of establishing deliberate indifference is showing that there was "harm caused by the indifference." *Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012).

**B. Analysis**

Defendants do not meaningfully challenge that there is evidence that plaintiff suffered from a sufficiently serious medical need for Eighth Amendment purposes. *See* Dkt. 52, at 10–11. Instead, defendants make a variety of alternative arguments about deliberate indifference and causation.

Defendants argue that an essential element of plaintiff's claim is that defendant DeMark "ignored" plaintiff's request for placement in the general population but that there is no evidence "that Mr. Teters required a special accommodation, or that Ms. DeMark possessed that information and failed to act." Dkt. 52, at 10–11. However, conflicts in the evidence regarding this point are readily apparent—plaintiff's complaint includes his statement, under penalty of perjury, that during his intake screening he said that he suffered from "depression, anxiety, psychosis, [PTSD] with suicidal tendencies and would not be able to cope with being placed in

the general population conditions . . . with this condition, and requested isolation." Dkt. 9, at 9. Thus there are genuine issues of material fact regarding whether plaintiff specifically informed defendant DeMark of his mental health issues and inability to cope with general population housing, contrary to defendants' argument that there is no evidence that plaintiff expressed more than a "common concern." *See* Dkt. 52, at 10.

Defendants alternatively argue that plaintiff cannot establish causation, even if defendant DeMark was aware of plaintiff's issue with being housed in the general population and failed to act. *See* Dkt. 52, at 11. According to defendant DeMark's declaration, she does not make housing placement determinations at screening and does not have authority over housing placement. *See* Dkt. 53, at 2. Instead, her role in screening is generally to determine whether an inmate needs immediate follow-up treatment, an appraisal within some time after screening, or no follow-up at all. *See* Dkt. 53, at 2.

Defendant DeMark does not recall her screening of plaintiff, but she explains that the form she completed on screening indicates that she recommended him for a follow-up assessment within 14 days. *See* Dkt. 53, at 3–4. According to defendant DeMark, if a prisoner expressed a significant concern about general population placement to her, "that would be noteworthy" and she "would inquire further." Dkt. 53, at 4. She would have "created a Primary Encounter Report to document the information." Dkt. 53, at 4. As noted above, plaintiff asserts that he did, in fact, tell defendant DeMark of his needs during screening.

Viewed in the light most favorable to plaintiff, even without the ability to make a housing determination herself, defendant DeMark did have the ability to recommend "immediate follow up treatment." *See* Dkt. 53, at 2. To the extent that there is evidence that defendant DeMark could have taken action by immediately referring plaintiff to a medical provider who had

authority to make a housing placement (*see* Dkt. 54, at 2; Dkt. 56-1, at 3), however, there must be evidence from which a trier of fact could reasonably conclude that defendant DeMark's failure to act was the direct and proximate cause of plaintiff's injuries. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (a § 1983 plaintiff must show both proximate and legal causation to prevail); *see also Prince v. Reyes*, 171 F. App'x 645, 646–47 (9th Cir. 2006) (failure to act not a proximate or direct cause of damages where even if action had been taken, outcome would not have changed).

Even if defendant DeMark could have requested immediate follow-up and assessment, here, plaintiff specifically alleges that within a few days of his intake, he had a mental health assessment with defendant Burt, where plaintiff states that he again relayed his 100% disability and inability to cope with placement in the general population to defendant Burt. *See* Dkt. 9, at 11. But, as noted above, defendant Burt disagreed and indicated that no alternate housing needs were necessary at the time. *See* Dkt. 9-2, at 16. Indeed, plaintiff alleges that he repeatedly communicated his issues with general population placement to medical staff and that they repeatedly declined to make an alternate housing recommendation. Thus even if defendant DeMark had taken action, there is no evidence from which a reasonable trier of fact could find that the outcome would have differed.

The Ninth Circuit's unpublished opinion in *Prince v. Reyes* is illustrative, as it involves similar circumstances.[2] *See* 171 F. App'x 645. In that § 1983 case, the Ninth Circuit noted that where the undisputed evidence showed that even if defendant deputies had taken action—referring a prisoner to a prison medical facility—the outcome would not have differed because

---

[2] Although unpublished decisions of the Ninth Circuit are not binding on this court, they have persuasive value and indicate how the Ninth Circuit applies binding authority.

1 even when the prisoner was seen by medical staff, they failed to provide appropriate treatment or
2 accurate diagnosis for weeks. *Id.* at 646–47. Similarly here, defendant DeMark's actions did not
3 cause plaintiff's asserted injury because even if DeMark had immediately referred plaintiff for a
4 mental health assessment, the evidence is undisputed that providers would nevertheless have
5 determined at that time that a general population placement was appropriate.

6 As the causation issue is dispositive, the undersigned does not address defendants'
7 arguments that plaintiff has established no more than a difference in medical opinion and that
8 qualified immunity bars defendant DeMark from liability for damages.

9 **III. Medical Malpractice**

10 Defendants also request summary judgment dismissal of plaintiff's medical malpractice
11 claims against defendants Abraha, Burt, Cruz, and DeMark. *See* Dkt. 52, at 12. Defendants
12 argue that plaintiff has failed to come forward with medical expert testimony that any of them
13 breached the standard of care. *See* Dkt. 52, at 13–14.

14 **A. Legal Principles**

15 Under Washington law, to show medical malpractice for failure to follow the accepted
16 standard of care, a plaintiff must show—

17 (1) The health care provider failed to exercise that degree of care, skill, and learning
expected of a reasonably prudent health care provider at that time in the profession
18 or class to which he or she belongs, in the state of Washington, acting in the same
or similar circumstances; [and]
19 (2) Such failure was a proximate cause of the injury complained of.

20 RCW 7.70.040. "In a medical malpractice action, the applicable standard of care generally must
21 be established by expert testimony." *Reagan v. Newton*, 7 Wn. App. 781, 790–91 (2019) (citing
22 *Reyes v. Yakima Health Dist.*, 191 Wn.2d 79, 86 (2018). "The expert testimony must establish
23 what a reasonable medical provider would or would not have done under the circumstances, that

24

the defendant failed to act in that matter, and that this failure caused the plaintiff's injuries." *Id.* at 791 (citing *Keck v. Collins*, 184 Wn.2d 358, 371 (2015)).

## B. Analysis

Plaintiff brings a medical malpractice claim against defendant DeMark on the basis that plaintiff reported his "100% disability" (his PTSD/anxiety) and inability to cope with being placed in the general population during defendant DeMark's screening of plaintiff, but that she ignored his request and did nothing to avoid placing him in the general population. *See* Dkt. 9, at 9. Subsequently, plaintiff alleges that he lost consciousness because of a panic attack on multiple occasions and when treated by defendants Cruz, Abraha, and/or Burt, informed them that he could not be placed in the general population. *See* Dkt. 9, at 11, 13–15, 17. Plaintiff provides treatment notes documenting his requests not to be placed in the general population and providers' determinations that plaintiff could be returned to the general population. Dkt. 9-2, at 5, 13–14; Dkt. 9-3, at 4–5, 7, 12. For instance, in a June 21 assessment, defendant Abraha noted plaintiff's request to be placed by himself but prescribed medication and a special watch alert for suicidal ideation or plan. *See* Dkt. 9-3, at 4–5.

Plaintiff alleges that each defendant's actions or failures to act were a breach of the standard of care and a proximate cause of his subsequent falls. *See* Dkt. 9, at 10, 13, 18, 26, 28. However, other than saying that this is so, plaintiff has come forward with no medical expert testimony to establish the appropriate standard of care for defendants Abraha's, Burt's, Cruz's, or DeMark's interactions with plaintiff, that each defendant breached the standard of care, and that the breach caused plaintiff's injuries. As noted above, this is insufficient, as it is well-settled that Washington law requires that in most instances involving alleged medical malpractice plaintiff must provide medical expert testimony to support elements of his claims. *See, e.g.*,

*Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 226 (1989); *accord Thompson v. Frank Luna*, 441 F. App'x 528, 529 (9th Cir. 2011); *Reynolds v. Wash. Dep't of Corrs.*, 724 F. App'x 604, 604 (9th Cir. 2018). Moreover, as the Court has already recognized, this case does not present the rare circumstances in which medical expert testimony is not required. *See Young*, 112 Wn.2d at 228; *see also* Dkt. 48, at 11; Dkt. 51.

Therefore summary judgment should be granted on plaintiff's medical malpractice claims against defendants Abraha, Burt, Cruz, and DeMark, and these claims should be dismissed with prejudice.

## CONCLUSION

The undersigned recommends that defendants' motion for summary judgment (Dkt. 52) be granted, that plaintiff's remaining claims be dismissed with prejudice, and that the matter be closed.

If the Court adopts the report and recommendation, it should also revoke plaintiff's *in forma pauperis* ("IFP") status for purposes of any appeal. IFP status on appeal shall not be granted if the district court certifies "before or after the notice of appeal is filed" "that the appeal is not taken in good faith[.]" Fed. R. App. P. 24(a)(3)(A); *see also* 28 U.S.C. § 1915(a)(3). A plaintiff satisfies the "good faith" requirement if he seeks review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any arguable basis in law or fact. *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Here plaintiff failed to come forward with any evidence or argument in response to defendants' summary judgment motion, so that the district court should certify that an appeal would not be taken in good faith.

1       Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

2 fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

3 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

4 review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

5 of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

6 *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

7 imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **December 13,**

8 **2019**, as noted in the caption.

9       Dated this 22nd day of November, 2019.

10

11       J. Richard Creatura
      United States Magistrate Judge